IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION NO. 03-303 |
| | : | |
| v. | : | |
| | : | |
| NASIM PERKINS | : | CIVIL ACTION No. 07-3371 |

**MEMORANDUM**

**Padova, J.**                                                                         February 14, 2008

Before the Court is Nasim Perkins' Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the Motion is denied.

I.   BACKGROUND

On October 7, 2003, Perkins was convicted by a jury of possession of more than five grams of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (count one) and unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) (count three). On October 9, 2003, following a second trial, Perkins was convicted by a jury of possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (count four) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (count five). On January 14, 2004, he was sentenced to a 180-month term of incarceration to be followed by eight years of supervised release. His judgment of conviction and sentence were affirmed by the United States Court of Appeals for the Third Circuit on May 10, 2006. United States v. Perkins, 180 Fed. Appx. 342 (3d Cir. 2006). The instant Motion challenges Perkins' convictions on counts four and five.

II.   LEGAL STANDARD

Perkins has moved for relief pursuant to 18 U.S.C. § 2255, which provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.  "Section 2255 does not provide habeas petitioners with a panacea for all alleged trial or sentencing errors."  United States v. Rishell, Crim. A. No. 97-294-1, Civ. A. No. 01-486, 2002 WL 4638, at *1 (E.D. Pa. Dec. 21, 2001) (citation omitted).  In order to prevail on a Section 2255 motion, the movant's claimed errors of law must be constitutional, jurisdictional, "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure."  Hill v. United States, 368 U.S. 424, 428 (1962).  Perkins seeks relief from his judgment of conviction and sentence on the following grounds:  1) insufficient evidence to support his conviction with respect to count four; 2) insufficient evidence to support his conviction with respect to count five; 3) ineffective assistance of trial counsel; and 2) ineffective assistance of appellate counsel.  The Government asks us to dismiss the Motion as untimely.

III.   DISCUSSION

    A.   <u>Timeliness</u>

Section 2255 requires that motions filed under that statute be filed within one year after the date on which the judgment of conviction becomes final.  28 U.S.C. § 2255; see also United States v. Wall, 456 F.3d 316, 317 (3d Cir. 2006).  The Third Circuit affirmed Perkins' judgment of conviction and sentence on May 10, 2006.  He did not file a petition for writ of certiorari with the

Supreme Court. Consequently, his judgment of conviction became final 90 days later, on August 8, 2006. See Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999); Sup. Ct. R. 13. Consequently, the time for Perkins to file a motion pursuant to 28 U.S.C. § 2255 expired on August 8, 2007. Perkins's initial Motion filed pursuant to 28 U.S.C. § 2255 is dated August 10, 2007 and was received by this Court on August 15, 2007.[1] Since Perkins' Motion was dated after the time for filing had expired, and he has not sought equitable tolling of the limitations period, we find that the Motion is time-barred. However, as the Motion was filed so close to the expiration of the period of limitations, we have also reviewed Perkins' claims on the merits.

    B.    Count Four

The jury convicted Defendant of count four, which charged him with knowing and intentional possession with intent to distribute a mixture or substance containing a detectable amount of cocaine base ("crack") on February 12, 2003, in violation of 21 U.S.C. § 841. (Indictment, count four.) Defendant asks us to vacate his conviction on count four on the ground that the evidence at trial was insufficient to support his conviction. The Government argues that Perkins is procedurally barred from collaterally attacking his conviction on this basis because he could have, but did not, raise this claim on direct appeal.

"Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" Bousley v. United States, 523 U.S. 614, 621 (1998) (quoting Reed v. Farley, 512 U.S. 339, 354 (1994)). Consequently, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate

---

[1] Perkins' initial Motion was not filed on the correct form. (Aug. 21, 2007 Order.) We granted him leave to refile on the correct form. (Id.) He refiled his Motion, on the correct form, on September 24, 2007.

3

either cause and actual prejudice, or that he is actually innocent." Id. at 622 (citations omitted). Perkins asserts ineffective assistance of appellate counsel as cause for his procedural default. Ineffective assistance of counsel "may satisfy the 'cause' prong of a procedural default inquiry . . . if the ineffectiveness rises to the level of a constitutional deprivation under Strickland v. Washington, 466 U.S. 668 (1984)." United States v. Mannino, 212 F.3d 835, 840 (3d Cir. 2000) (citations omitted). To satisfy the Strickland standard, Perkins must demonstrate that his appellate counsel's "representation fell below an objective standard of reasonableness" and that he was thereby prejudiced. Id. (citing Strickland, 466 U.S. at 687-888). The Third Circuit has already found that appellate counsel wholly disregarded his obligations as Perkins' lawyer on appeal and we find that Perkins has demonstrated that his appellate counsel's representation fell below an objective standard of reasonableness. See Perkins, 180 Fed. Appx. at 343-44.[2] Perkins can satisfy the prejudice element of the Strickland test by demonstrating that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Mannino, 212 F.3d at 840 (quoting Strickland, 466 U.S. at 694). However, we cannot determine whether Perkins has satisfied the prejudice element, establishing that there is cause to excuse his procedural default, without analyzing the merits of his claim that there was insufficient evidence to support his conviction.

When we consider whether the evidence at trial was sufficient to convict Perkins for possession with intent to distribute cocaine base, "the appropriate standard is whether, viewing the evidence in the light most favorable to the government as verdict winner, a jury could have found every element of the crime beyond a reasonable doubt." United States v. Ramos, 147 F.3d 281, 284

---

[2] Appellate counsel's performance is discussed in Section III.E., below.

(3d Cir. 1998) (citing <u>United States v. Carr</u>, 25 F.3d 1194, 1201 (3d Cir. 1994)). The elements of the offense of possession of a controlled substance, in this case cocaine base, with intent to distribute, are "that defendant (1) possessed a controlled substance, (2) knew that he possessed a controlled substance, and (3) intended to distribute the controlled substance." <u>United States v. Hargrove</u>, Crim. A. No. 99-232-01, Civ. A. No. 03-387, 2003 WL 22232853, at *8 (E.D. Pa. Aug. 1, 2003) (citing <u>United States v. Kim</u>, 27 F.3d 947, 959 (3d Cir. 1994)).

The evidence at trial established that police officers went to 2231 Latona Street in Philadelphia on February 12, 2003 to "conduct a narcotics investigation using a confidential informant that [sic] would make a purchase from inside of the location." (Oct. 8, 2003 N.T. at 29, 34.) Police officers executed a search warrant of the premises the same day. (<u>Id.</u> at 34.) The search warrant was based on controlled buys of cocaine made at the property by police officers with the assistance of a confidential informant on February 10 and 11, 2003. (<u>Id.</u> at 52-54, 74.) Police Officer Ronald McCutcheon field tested the drugs that were purchased on February 10 and they tested positive for cocaine. (<u>Id.</u> at 53.) On February 12, 2003, Office McCutcheon gave the confidential informant $20 in prerecorded buy money to purchase crack cocaine from the premises at 2231 Latona Street. (<u>Id.</u> at 70.) Office McCutcheon saw the confidential informant go to 2231 Latona Street, stay for two to three minutes, and then return. (<u>Id.</u> at 71.) After the confidential informant returned, the confidential informant gave Officer McCutcheon four red ziploc packets of alleged crack cocaine. (<u>Id.</u>)

Officer McCutcheon was at the back of the property when the search warrant was executed on February 12, 2003. (<u>Id.</u> at 35.) He testified that, after he heard other police officers knock on the front door of the house located on the property and announce the warrant, he saw Perkins attempt

5

to exit the house through a second floor rear bedroom window onto the roof of an adjoining shed. (Id. at 33-39, 51-52.) Officer McCutcheon told him "stop, police" and identified himself. (Id. at 39.) Officer McCutcheon then saw Perkins reach into his waistband area, grab something and throw it. (Id. at 39, 43.) Perkins then exited the bedroom through the window and climbed up onto the roof. (Id.) He then climbed from the shed roof onto the top roof of the building. (Id. at 41.) Officer McCutcheon later entered the premises of 2231 Latona Street and confiscated a clear baggie containing four clear ziploc packets of alleged crack cocaine from the second floor hallway. (Id. at 44.) Officer McCutcheon also went into the second floor rear bedroom and found, in a lockbox safe, "one clear baggie containing large chunks of alleged crack cocaine, along with new and unused paraphernalia, paraphernalia meaning [z]iploc packets." (Id. at 45.) In addition to the lockbox, the rear bedroom also contained a police scanner. (Id.)

Police Officer Sean Kelly assisted with the execution of the search warrant at 2231 Latona Street on February 12, 2003. (Oct. 9, 2003 N.T. at 4.) Officer Kelly was on the east side of the property, near an adjoining vacant lot, when he heard officers knock and announce that they were police. (Id. at 5.) Within seconds he saw movement on the roof of the premises. (Id.) He saw Perkins on the roof looking at officers at the front door. (Id. at 6.) Perkins was holding a small black revolver. (Id.) Officer Kelly yelled "gun" and saw Perkins throw his gun into the lot behind Officer Kelly and run towards the back of the house. (Id.) After the property was secured, Officer Kelly went into the lot and recovered the gun. (Id. at 10.) The gun was a .38 caliber with five live .38 caliber rounds inside. (Id.)

Police Sergeant Thomas Meehan also participated in the execution of the search warrant at 2231 Latona Street on February 12, 2003. (Id. at 23-24.) He knocked and announced the police

presence and the search warrant. (Id. at 24.) Before the police officers were able to enter the premises,[3] Officer Kelly informed Sgt. Meehan that there was a man on the roof with a gun. (Id. at 24-25.) He looked up and saw Perkins throw the gun. (Id. at 25.) After the officers gained access to the premises, Sgt. Meehan ran inside, and went upstairs to the rear of the second floor and onto the roof. (Id. at 25.) Once Sgt. Meehan reached the roof of the premises, he arrested Perkins, patted him down, and found several .38 caliber bullets in his left arm area. (Id. at 25, 38.) Sgt. Meehan also confiscated $89.00, including $20.00 in prerecorded buy money, from Perkins at the time of his arrest. (Id. at 30.) The $20.00 in prerecorded buy money had been used by Officer McCutcheon earlier that day. (Id. at 40.) While Sgt. Meehan was on the roof he also saw, and confiscated, thirteen baggies containing alleged crack cocaine. (Id. at 34.)

Viewing the evidence in the light most favorable to the Government, Ramos, 147 F.3d at 284, we find that a jury could have found every element of the crime of possession of cocaine base ("crack') with intent to distribute beyond a reasonable doubt. We further find, accordingly, that Perkins was not prejudiced by his appellate counsel's failure to raise this claim on appeal. Consequently, we conclude that Perkins has not demonstrated cause and actual prejudice so as to assert this claim in the instant Motion despite his procedural default. The Motion is, therefore, denied as to Perkins' claim that the evidence at trial was insufficient to sustain his conviction for violation of 21 U.S.C. § 841 (count four).

    C.    Count Five

The jury convicted Defendant of count five, which charged him with possession of a firearm

---

[3] The door to 2231 Latona was fortified with two-by-fours and it took police officers three to five minutes to get into the residence. (Oct. 8, 2003 N.T. at 86.)

in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Perkins argues that there is insufficient evidence to support his conviction for this offense because there was insufficient evidence to support his conviction for the associated drug trafficking crime, count four. Perkins previously claimed, on direct appeal, that there was insufficient evidence to support his conviction for count five. The Third Circuit rejected this claim. See Perkins, 180 Fed. Appx. at 344. Since the sufficiency of the evidence to support Perkins' conviction on count five was raised and decided by the Third Circuit on direct appeal, it cannot be relitigated here and the Motion is denied as to this claim. See United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993) ("Section 2255 generally 'may not be employed to relitigate questions which were raised and considered on direct appeal.'" (quoting Barton v. United States, 791 F.2d 265, 267 (2d Cir. 1986))). Furthermore, an examination of the record of this claim, in the light most favorable to the Government, establishes that there was sufficient evidence to support Defendant's conviction for possession of a firearm in furtherance of a drug trafficking crime.

      We have found that there was sufficient evidence for the jury to find every element of the crime of possession of cocaine base ("crack') with intent to distribute beyond a reasonable doubt. We also find that there was sufficient evidence for the jury to find that Perkins possessed the .38 caliber revolver that Officer Kelly and Sgt. Meehan saw him throw from the roof of 2231 Latona Street. In order to support a conviction for possession of a firearm in furtherance of a drug trafficking crime pursuant to 18 U.S.C. § 924(c)(1), "the evidence must [also] demonstrate that possession of the firearm advanced or helped forward a drug trafficking crime." United States v. Sparrow, 371 F.3d 851, 853 (3d Cir. 2004) (citing United States v. Lomax, 293 F.3d 701, 705 (3d Cir. 2002) and United States v. Ceballos-Torres, 218 F.3d 409, 414 (5th Cir. 2000)). Courts use the

following nonexclusive factors in making this determination: "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." Id. (quoting Ceballos-Torres, 218 F.3d at 414-15 (citations omitted). As described above, the evidence at trial established that Perkins was carrying a loaded firearm when he climbed out of the window of the rear bedroom on the second floor, that there were 13 packets of crack cocaine on the roof of the premises, in the area where Perkins was arrested, and that Perkins had $89.00 of cash on his person at the time he was arrested, including $20.00 in prerecorded buy money. The police found additional packets of crack cocaine and a police scanner inside the house and the front door of the premises was fortified. Viewing the evidence in the light most favorable to the Government, Ramos, 147 F.3d at 284, we find that a jury could have found beyond a reasonable doubt that Perkins possessed a firearm in furtherance of a drug trafficking crime. The Motion is, therefore, denied as to Perkins' claim that the evidence at trial was insufficient to sustain his conviction for violation of 18 U.S.C. § 924(c)(1) (count five).

    D.    Ineffective Assistance of Trial Counsel

Perkins argues that his trial counsel[4] was ineffective in (1) interfering with his right to testify at trial; (2) failing to investigate certain witnesses; and (3) failing to make certain arguments to the jury. As discussed above, the United States Supreme Court held, in Strickland, that criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance, and determined that a defendant claiming ineffective assistance of counsel must first show that "counsel's

---

[4] Perkins had different lawyers at trial and on appeal.

9

representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. In order to show that his attorney's representation was objectively unreasonable, Perkins must show that his attorney made errors so serious that he was not "functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.  "In evaluating counsel's performance, [the Court is] 'highly deferential' and 'indulge[s] a strong presumption' that, under the circumstances, counsel's challenged actions 'might be considered sound . . . strategy.'" Buehl v. Vaughn, 166 F.3d 163, 169 (3d Cir. 1999) (quoting Strickland, 466 U.S. at 689).  "Because counsel is afforded a wide range within which to make decisions without fear of judicial second-guessing, . . . it is 'only the rare claim of ineffectiveness of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance.'" Id. (quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).  If a defendant shows that counsel's performance was deficient, he must also show that the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687.  "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.  Consequently, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

     Perkins contends that his trial counsel was ineffective in interfering with his right to testify during his trial.  "It is well established that the right of a defendant to testify on his or her behalf at his or her own criminal trial is rooted in the Constitution.  This right is personal and thus only the defendant may waive it." United States v. Pennycooke, 65 F.3d 9, 10 (3d Cir. 1995) (citations omitted).  Defense counsel has the duty to inform the defendant of his or her right to testify,

however, "the decision itself is ultimately that of the defendant." United States v. Aikens, 358 F. Supp. 2d 433, 436 (E.D. Pa. 2005) (citing Pennycooke, 65 F.3d at 12 and Jones v. Barnes, 463 U.S. 745, 751 (1983)). "[I]n order 'to prevail on trial counsel's alleged refusal to allow a client to testify, the [defendant] must do more than just assert that his lawyer refused to allow him to testify.'" Id. (quoting United States v. Smith, 235 F. Supp. 2d 418, 424 (E.D. Pa. 2002)). Consequently, the defendant "must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand.'" Id. (quoting Smith, 235 F. Supp. 2d at 424).

Perkins claims only that his trial counsel "infringed [his] right to testify." (Mot. ¶ D(1).) This unsubstantiated claim is clearly insufficient to establish that his trial counsel was ineffective. Moreover, "[w]here a defendant is aware of and understands his right to testify . . . counsel's alleged failure to call the defendant to the stand does not constitute ineffective assistance of counsel." Smith, 235 F. Supp. 2d 424-25 (citing United States v. Castillo, 14 F.3d 802, 804-05 (2d Cir. 1994); United States v. Eisen, 974 F.2d 246, 265 (2d Cir. 1992); United States v. Aguirre, 912 F.2d 555, 562-63 (2d Cir. 1990)). The record before us establishes that Perkins was aware of and understood his right to testify. On October 6, 2003, at the close of the evidence in Perkins' first trial (two days before his second trial began), Perkins elected not to testify on his own behalf and we held a colloquy with him, to make sure that he understood his right to testify and that his decision not to testify was made voluntarily:

> The Court: I just want to make sure the record is clear. Mr. Perkins, you have had the opportunity to testify, and I'm certain you've discussed that with counsel fully, haven't you?
>
> Mr. Perkins: Say that again. I'm sorry.

11

> The Court: Whether or not you should testify in this case?
>
> Mr. Perkins: Say - - I - - repeat yourself again.
>
> The Court: Did you discuss with your attorney whether or not you should testify in this case?
>
> Mr. Perkins: Yes.
>
> The Court: And was it your decision voluntarily not to testify?
>
> Mr. Perkins: Yes.
>
> The Court: Okay, just want to make sure. You understand that you do have the right to testify in your own defense?
>
> Mr. Perkins: Yes.

(Oct. 6, 2003 N.T. at 116.) The Motion is, accordingly, denied as to Perkins' claim that his trial counsel infringed his right to testify.

Perkins also contends that his trial counsel was ineffective for failing to "properly investigate witness [sic] for exculpatory evidence where warrant was served (at residence)." (Mot. ¶ D(3).) Perkins has not, however, identified any person who was at 2231 Latona Street at the time the warrant was served who would have been willing to testify at trial on his behalf. Moreover, Perkins does not assert that he informed his trial counsel of the identities of any such witnesses. Consequently, we find that Perkins has not overcome "the strong presumption" that his trial counsel's failure to investigate unidentified witnesses was sound trial strategy. See Buehl, 166 F.3d at 169. We further find that trial counsel's failure to investigate witnesses who were at 2231 Latona Street at the time the warrant was served was not ineffective assistance of counsel and the Motion is denied as to this claim.

Perkins further argues that his trial counsel was ineffective for failing to argue to the jury that

he was not identified on the search warrant and for failing to argue to the jury that "the Government piked inference on top of inference" to convict him. (Mot. ¶ B.) Perkins does not elaborate on either of these claims. As we have found that there was sufficient evidence to support Perkins' convictions on both counts four and five, we find that he could not have been prejudiced by his trial counsel's failure to make these arguments. The Motion is, accordingly, denied as to both of these claim of ineffective assistance of counsel.

E.     Ineffective Assistance of Appellate Counsel

Perkins contends that his appellate counsel was ineffective, as he repeatedly asked for extensions of time to file the appendix and brief in connection with Perkins' appeal and, after more than six months of extensions, filed only a short Anders brief.[5] Defendant asks us to reinstate his right to appeal so that the United States Court of Appeals for the Third Circuit can decide his appellate issues on the merits. We will deny Perkins' motion with respect to this claim because the Third Circuit decided this issue on direct review. See DeRewal, 10 F.3d at 105 n.4. The Third Circuit considered appellate counsel's effectiveness on direct appeal and concluded that his Anders brief was "wholly inadequate." Perkins, 180 Fed. Appx. at 343. Indeed, the Third Circuit found that appellate counsel had failed to conscientiously examine the record for appealable issues and explain why all of those issues were frivolous. Id. at 344. In addition to examining appellate counsel's conduct, the Third Circuit also independently examined "the District Court record (including the suppression hearing, the trial transcript, the Pre-Sentencing Report, and the sentencing transcript),

---

[5]The docket from Perkins' appeal, United States v. Perkins, C.A. No. 04-1166 (3d Cir.), shows that his appellate counsel filed motions for extension of time to file brief and appendix on July 6, 2004, August 2, 2004, and January 5, 2005. Finally, on March 14, 2005, he filed a motion to withdraw as counsel for appellant pursuant to Anders v. California, 386 U.S. 738 (1967).

along with Perkins' pro se brief and the Government's brief," and determined that the issues raised by Perkins in his appeal were all "patently frivolous." Id. As the issue of appellate counsel's ineffectiveness was raised and considered on direct appeal, it cannot be relitigated here and the Motion is denied as to this claim. DeRewal, 10 F.3d at 105 n.4.[6]

IV.  CONCLUSION

For the foregoing reasons, Perkins' Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 is denied in its entirety.

---

[6] Perkins also contends that the Third Circuit erred by conducting an independent review of the merits of his appeal rather than appoint new counsel to represent him on appeal after it found that his appellate counsel was inadequate. When it finds appellate counsel to be inadequate, the Third Circuit normally appoints new counsel. Perkins, 180 Fed. Appx. at 344 (noting that, when appellate counsel has failed to comply with his Anders obligation to conscientiously examine the record, "we normally discharge current counsel, appoint substitute counsel, restore the case to the calendar, and order supplemental briefing pursuant to Third Circuit L.A.R. 109.2(a)" (citing United States v. Youla, 241 F.3d 296, 300 (3d Cir. 2001))). However, there is an exception from this practice "for 'those cases in which frivolousness is patent.'" Id. (citing Youla, 241 F.3d at 300). The Third Circuit found that the exception applied in this case because all of Perkins' issues on appeal were "patently frivolous." Id. We are aware of no basis on which we may reexamine the determination of the Court of Appeals with respect to this issue. Claims of error by the Third Circuit should be addressed to that Court or to the Supreme Court of the United States. The Motion is, accordingly, denied as to Perkins' claim that the Third Circuit erred by deciding the merits of his appeal without first appointing new counsel to represent him.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION NO. 03-303 |
| v. | : | |
| NASIM PERKINS | : | CIVIL ACTION No. 07-3371 |

### O R D E R

**AND NOW**, this 14th day of February, 2007, upon consideration of Nasim Perkins' *pro se* Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Crim. Docket No. 106) and the Government's response thereto, **IT IS HEREBY ORDERED** that the Motion is **DENIED**. As Perkins has failed to make a substantial showing of the denial of a constitutional right, there is no basis for the issuance of a certificate of appealability.

BY THE COURT:

/s/ John R. Padova
_____
John R. Padova, J.